NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2011
Decided March 18, 2011

*Before*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 10-2130

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 07 CR 614-11 |
| LINDELL BLOUNT, also known as LOCKJAW, *Defendant-Appellant.* | Joan B. Gottschall, *Judge*. |

**O R D E R**

Lindell Blount pleaded guilty to conspiring to possess with intent to distribute heroin, 21 U.S.C. §§ 846, 841(a)(1), and the district court sentenced him to the statutory minimum of 120 months' imprisonment, *id.* § 841(b)(1)(A)(i). Blount's sole argument on appeal is that the district court should have applied the safety-valve exception, which allows courts to sentence a defendant below the mandatory minimum under limited factual circumstances. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). Because Blount does not point to any clear error committed by the court in finding those factual circumstances absent here, we affirm the judgment.

I.

Blount, along with ten co-conspirators, was indicted for engaging in a conspiracy to distribute heroin, and he entered into a blind plea of guilty to one count of the indictment. He admitted that between January and September 2007, he conspired with several people, including Larry Johnson, to distribute more than one kilogram of heroin near 79th Street and Cottage Grove Avenue in Chicago.

Blount later met with the government for an interview in an attempt to qualify for the safety-valve exception. He told the government that he sold heroin only for Aukey Williams, only between July and August of 2007, and only "in the area of 79th Street." He admitted being a member of a "crew" called Young Money but denied that the group had any gang affiliation or involvement with selling narcotics. Blount also stated that he did not know whether Johnson sold heroin.

The government opposed Blount's request for the safety-valve exception, maintaining that Blount had not truthfully disclosed information about the conspiracy. At sentencing, Williams, the leader of the drug conspiracy, testified that between January and April 2007 Blount was selling heroin for Johnson, who was selling heroin for Williams. Beginning around July, Williams continued, Blount began working directly for him, and at one point Blount passed out free samples of heroin to potential customers at 65th Street and Maryland Avenue in an effort to expand their customer base. Blount testified next, largely repeating the information from his proffer. He told the court that he had known Johnson since they were children but denied selling heroin for him or having any knowledge that Johnson sold heroin. He stated that he began selling heroin in July but had never sold heroin at 65th and Maryland and had no knowledge of anyone selling heroin there. Blount also testified about his participation in Young Money and maintained that the group consisted of some friends who hung out and played basketball together. They did not, he insisted, sell drugs, and Johnson was not a part of the group.

Sergeant Brian Hawkins, a member of the Organized Crime Division of the Chicago Police Department, also testified. He explained that his basic duties involve investigating gang-infested areas, including 65th and Maryland, and identifying key players and gang conflicts. The district court asked the officer if it is "conceivably true" that someone who hung out around 64th and Maryland, where Blount's mother lived and where he gathered with friends, would have no knowledge of the drug sales that happen there. Sergeant Hawkins responded that the notion is "ridiculous, because even the old ladies in the area knew what was going on on the block." And as for Young Money, the officer described the group as "a criminal street gang" allied with the Black Disciples. He discussed a database

that the Chicago Police Department maintains that identifies Blount and Johnson both as members of Young Money and as drug dealers. Sergeant Hawkins also testified that he believed that Blount and Johnson were responsible for selling drugs in the area of 65th and Maryland in 2007.

The district court declined to apply the safety-valve exception after finding that Blount's proffer did not truthfully reveal all the information he knew about the drug conspiracy. Crediting the testimony of Sergeant Hawkins, the court determined that Blount untruthfully denied his and Johnson's gang involvement with Young Money, Johnson's drug dealing, and drug dealing in general at 64th and Maryland. The court found that Blount's offense involved between three and ten kilograms of heroin, and so his base-offense level was thirty-four, but the court subtracted three levels for acceptance of responsibility. *See* U.S.S.G. §§ 2D1.1(c)(3), 3E1.1(a), (b). Blount's adjusted offense level of 31 and criminal history category of I yielded a guidelines range of 108 to 135 months, and the court sentenced him to 120 months' imprisonment, the statutory minimum.

II.

Blount argues that the district court erred when it declined to apply the safety-valve exception. He first asserts that the court improperly credited Officer Hawkins's testimony. And in the alternative, Blount contends that even if he did not disclose everything he knew, the testimony at issue did not relate to the charged conspiracy or the conduct surrounding it, and so it should not have precluded the court from applying the exception.

Under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a), a district court may sentence a defendant without regard to the statutory minimum if the defendant meets five requirements. Only the fifth requirement is at issue here: whether Blount "truthfully provided to the Government all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). We review the district court's refusal to apply the safety-valve exception for clear error. *United States v. Olivas-Ramirez*, 487 F.3d 512, 516 (7th Cir. 2007).

Blount first argues that the district court erred in crediting Sergeant Hawkins's "non-specific, uncorroborated" testimony that Blount sold drugs at 65th and Maryland. But the court did not deny the safety-valve reduction because it believed that Blount was dealing drugs at 65th and Maryland; rather the court denied the reduction because it found incredible Blount's testimony that he knew nothing about Johnson's drug dealing or about drugs sold at that area in general. Moreover, a "district court's choice of whom to believe is almost never vulnerable to a finding of clear error." *United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir. 2003). Here the court was entitled to credit Sergeant Hawkins's testimony that

Blount and Johnson both were members of Young Money, that Young Money was a street gang involved in selling drugs, and that it would be "ridiculous" to believe that Blount did not know about the pervasive drug dealing at 65th and Maryland. *Olivas-Ramirez*, 487 F.3d at 517; *United States v. Montes*, 381 F.3d 631, 637 (7th Cir. 2004). Furthermore, despite Blount's contrary contention, Sergeant Hawkins's testimony was corroborated by Williams, who testified that Blount sold heroin for Johnson and that Blount himself handed out heroin for Williams in the area of 65th and Maryland.

Next Blount contends that even if his testimony were false, it was not relevant to the charged conspiracy or conduct that was part of a common scheme or plan and therefore should not have disqualified him from receiving the safety-valve reduction. 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). He maintains that the indictment charged the conspirators with distribution only at 79th and Cottage Grove, so any testimony about drug sales at 65th and Maryland is unrelated to the conspiracy. To the contrary, count one of the indictment charged Blount and his co-conspirators with selling drugs both at 79th and Cottage Grove and "in the area of 65th Street and Cottage Grove." Maryland Avenue is one block east of Cottage Grove Avenue; the intersection of 65th and Maryland, then, is part of the realm of 65th and Cottage Grove.

Still, even ignoring the fact that Blount's testimony pertains to the charged indictment, he still would be ineligible for the safety-valve exception because his testimony related to a common scheme. Offenses constitute a common scheme when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar modus operandi." *Montes*, 381 F.3d at 635; U.S.S.G. § 1B1.3 cmt. n.9(A). The sale of drugs at 79th and Cottage Grove and at 65th and Maryland occurred during the same time period, involved the same drug, and included the same key players; the offenses, then, certainly constituted a common scheme. *See United States v. Adeyeye*, 359 F.3d 457, 463 (7th Cir. 2004). At base, Blount admitted to his own criminal conduct and nothing more. The district court did not clearly err in determining that Blount's proffer was inadequate to warrant a safety-valve reduction.

Accordingly, we AFFIRM the judgment.